## Ward, Tonnie

| | |
|---|---|
| **From:** | Thomas, Phyllis |
| **Sent:** | Tuesday, June 15, 2021 1:50 PM |
| **To:** | Ward, Tonnie |
| **Cc:** | Ryan, Chandell |
| **Subject:** | RE: HELP |

Thank you for the clarification.  Ms. Suttler is the HR Manager for SW.  She is not in EDI.

Phyllis Taylor Thomas, PHR, IPMA-SCP
Officer, EEO, Labor, Diversity & Inclusion
City of Memphis
125 N. Main Street / Room 414
Memphis, TN 38103
(901) 573-1824
phyllis.thomas@memphistn.gov

**"Management is doing things right; leadership is doing the right thing"**
                **Peter F. Drucker**

*We are hiring!* – *City of Memphis Jobs*   *MPD Jobs*

 

This e-mail may contain Protected Health Information and/or personal identifiable information that are of a sensitive and confidential nature.  You are required to maintain this information in a secure and confidential manner and are prohibited from sharing without first obtaining permission from the individual who is the subject of this message unless permitted by law.  Unauthorized disclosure may subject you to penalties under federal and state law.

**IMPORTANT WARNING:**  The documents accompanying this transmission contain confidential health information or personal identifiable information that is legally privileged.  The information contained in this e-mail message is intended solely for the use of the above named recipient (s). If you are not the intended recipient, or a person responsible for delivering this information to the intended recipient, you are hereby notified that any unauthorized review, use, disclosure, copying, or distribution of any confidential and/or privileged information contained in this e-mail is strictly prohibited.  If you have received this information in error, please notify us immediately by e-mail reply or by telephone at (901-576-6403) so that we can correct the error and arrange for destruction or return of the e-mailed document.

**From:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Sent:** Tuesday, June 15, 2021 1:47 PM
**To:** Thomas, Phyllis <Phyllis.Thomas@memphistn.gov>
**Cc:** Ryan, Chandell <Chandell.Ryan@memphistn.gov>
**Subject:** Re: HELP

SW HR/ EDI Business Partner Manager Ms. Erika

Get Outlook for iOS

**From:** Thomas, Phyllis <Phyllis.Thomas@memphistn.gov>
**Sent:** Tuesday, June 15, 2021 1:45:59 PM

**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Cc:** Ryan, Chandell <Chandell.Ryan@memphistn.gov>
**Subject:** RE: HELP

Received

Please provide the name of the EDI representative that was in the meeting referenced on June 10th.

Phyllis Taylor Thomas, PHR, IPMA-SCP
Officer, EEO, Labor, Diversity & Inclusion
City of Memphis
125 N. Main Street / Room 414
Memphis, TN 38103
(901) 573-1824
phyllis.thomas@memphistn.gov

**"Management is doing things right; leadership is doing the right thing"**
        **Peter F. Drucker**

*We are hiring!* – *City of Memphis Jobs    MPD Jobs*

 

This e-mail may contain Protected Health Information and/or personal identifiable information that are of a sensitive and confidential nature.  You are required to maintain this information in a secure and confidential manner and are prohibited from sharing without first obtaining permission from the individual who is the subject of this message unless permitted by law.  Unauthorized disclosure may subject you penalties under federal and state law.

**IMPORTANT WARNING:** The documents accompanying this transmission contain confidential health information or personal identifiable information that is legally privileged.  The information contained in this e-mail message is intended solely for the use of the above named recipient (s). If you are not the intended recipient, or a person responsible for delivering this information to the intended recipient, you are hereby notified that any unauthorized review, use, disclosure, copying, or distribution of any confidential and/or privileged information contained in this e-mail is strictly prohibited. If you have received this information in error, please notify us immediately by e-mail reply or by telephone at (901-576-6403) so that we can correct the error and arrange for destruction or return of the e-mailed document.

**From:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Sent:** Monday, June 14, 2021 8:23 PM
**To:** Thomas, Phyllis <Phyllis.Thomas@memphistn.gov>
**Cc:** Ryan, Chandell <Chandell.Ryan@memphistn.gov>
**Subject:** Re: HELP

As recent as Thursday, June 10, 2021 FT EE Oshawn Smith inquired during the meeting at City Hall in the presence of the following:

Chandell Ryan
Philip Davis
Darius Jones
James Manual
Ken Millen
Erika Suttlar
AFSCME Leadership, EDI, etc.

"Why hadn't anything been done to me (Tonnie Ward) for the allegations that he was advised of by Terence Nickelberry with a statement advising derogatory comments about him (Oshawn Smith) made by me?"

In addition to, "why is Terence being left out of meeting for telling the truth on me (Tonnie Ward)?" OShawn Smith advised he is tired of this something needs to be done to me (Tonnie Ward).

Along with other content that I will outline in my official documents of how the ongoing discrimination, retaliation and harassment against me has caused & is causing my work environment to remain hostile and unbearable. And my concerns for my safety, character, livelihood continue to go unaddressed by the City of Memphis Solid Waste Management Division.

Again, I reference _unaddressed_ because previous threats by salary/ hourly employees are shone off, slashes to my face on the communication board, false allegations of retaliation, hostility in the work place, harassment, open threats being made to employees and management about my demise, etc. are just a few increasing concerns that I have asked to be addressed, corrected and ended immediately and they have not.

All are still unresolved. I'm only being told that investigations have concluded, but the horrific behavior of my subordinates and hourly employees continue. It's a repeat circumstance of the sexual harassment and respectful workplace violations September 24, 2019 I reported, but did not receive immediate attention until the individual cornered and confronted me in April 2020.

Not to mention, I've asked for documentation from a 6+ month long investigations involving allegations made to HR/ EDI concerning me that I advised were not true and were all attempts to gather information has led to dead end and being made aware of comments such as Mr. Oshawn Smith made openly in a labor meeting gives me grave cause for concern.

In addition, all my numerous attempts to reach out to my direct report (previous and past) and City of Memphis HR/ EDI have led to me accepting that my physical or mental wellbeing is not a priority. It's evident no actions will be taken until I'm harmed physically or the CoM leadership continue to allow tenured individuals to harass and recruit others to harass me making each day I report to work more and more hostile.

Mr. Oshawn Smith had every right then to reach out to EDI as he did when he was advised of the erroneous comments made about him by me. That's his right; however it's not right to take the untrue statements and harbor all this bitterness and resentment for almost a year and continue to violate Respect Workplace on hearsay. The comments being made about me in my presence (ear shy) or openly by hourly and management is considered workplace bullying and harassment; which I have consistently asked to be resolved and put to an end. It has not.

Mr. Oshawn Smith has every right to believe what was stated to him by his long time friend w/o having ever been in my presence or held a conversation with me for more than a 60 second span. That's his right, but its not true and to continue this type of allegations and abrasive behavior whenever there is an audience is not fair to me.

I explained to Ms. LeKesha Becton months ago when she called me to investigate this matter; I have "no" communication with this EE. I have NEVER been in a situation to address Mr. Oshawn Smith or have any reason to hold conversations with him or about him.

The continued plots and ploys orchestrated against me are violating my rights as a CoM EE and have went on far too long without being properly addressed or resolved.

I advised last year and I am advising now, that I can no longer allow or endure the continuous attacks from the same individuals due to issues that did not involve me and I am continually being discriminated against for no reason.

Now to have confirmed knowledge that during a meeting pertaining to operational requirements OShawn Smith uproars once more led to him being asked to do statements and that investigations would be revisited concerns me. I did not

report to work upon gaining knowledge of the City Hall matter because I was very distraught to know after being told the investigation had concluded, Mr. Oshawn Smith was advised it would be revisited all because he openly requested that something should be done to me.

When does this end? It's beyond unfortunate that I have to experience this ongoing situation with discrimination, threats, harassment and hostile environment and it continues to go unresolved. I am asking for help in this matter and genuinely want ALL of this to end.

It seems I've exhausted all avenues the CoM can give and its bothersome that my entire tenure with the CoM I have been targeted for reporting harassment or retaliated against because more tenured employees are rallying against me because of a role or the previous Division Director actions. This must end.

*Tonnie M. Ward*
*Operations Administrator*
*Division of Solid Waste Collections*
*City of Memphis*
*125 Main Street, 6th Floor – Room 628*
*Memphis, TN 38103*
*901.636.6831 Office*
*901.395.4942 Mobile*
*901.636.9893 Fax*
tonnie.ward@memphistn.gov



# City of Memphis
**TENNESSEE**

**JIM STRICKLAND**
**MAYOR**

**DIVISION OF SOLID WASTE MANAGEMENT**

**To:** Albert P. Lamar, Director- Solid Waste Division

**From:** Tonnie Ward, Solid Waste Collections Administrator-Solid Waste Division

**Date:** September 24, 2019

**Subject:** Statements of Concerns

On August 20, 2019, at approximately 11:30 AM, Mr. Terence Nickelberry and I were called into Mr. Anthony Woodard's office to discuss Administrator duties for Midtown/ Bellevue and Farrisview. In addition to, the expectations of us both learning many of the job functions that Mr. Anthony Woodard currently performs, but does not have a back-up to complete, in the event of his absence.

The conversation began very informative with them both expressing how excited they were to have me onboard. Mr. Nickelberry continued with stating the plans "we" as a team would execute to make the City of Memphis, Solid Waste Division, a much more positive and highly productive area to work for many of our sanitation employees. I agreed. The conversation remained somewhat professional in the beginning stages, but fifteen minutes into the meeting Mr. Woodard and Mr. Nickelberry did not see eye to eye on the narrative that Mr. Woodard communicated about North sector and South sector of the City of Memphis.

Mr. Woodard began to express over the past twenty years, the employees have not possessed desire to do their jobs as assigned and he wanted "us" both to understand the North belonged to me and the South belonged to Mr. Nickelberry. I was still clueless, but listened attentively.

Mr. Nickelberry stated his thoughts as my trainer, it would be most productive for me to learn all facets of the city, as well as the administrative duties due to majority of our time would be split in the area needing the most attention. Also, we were approaching leaf season. Again, I was clueless, but didn't interrupt. Mr. Woodard began to yell and Mr. Nickelberry asked him to lower his tone. Mr. Woodard complied. Mr. Nickelberry walked out the office to take a call and as he was exiting the door, he advised Mr. Woodard that he should focus more on talking professionally to others and stop being a bully. When Mr. Nickelberry exited Mr. Woodard dropped two profanities. I was shocked.

Unfortunately, this was the beginning of what would become a four-week daily rant, intimidation tactic, unprofessional and unwarranted remarks presented to me by Mr. Woodard.

From my second day of employment with the City of Memphis (August 20, 2019) until as recent as September 20, 2019 Mr. Woodard has become more and more vulgar and disrespectful with his comments to me and about others and especially Mr. Terence Nickelberry.

Below I have outlined dates and remarks of the comments that has driven me to this point in asking for assistance to resolve Mr. Woodard from making certain comments or using intimidation tactics where my employment is concerned. It has been nerve wrecking from my very 2nd day and as recent as yesterday, I am confident in stating unless this matter is resolved, Chief Woodard actions and remarks will negatively impact my daily performance. I cannot allow that to happen!

1.  **20 August 19:** Mr. Woodard stated to me that I should not trust Mr. Terence Nickelberry and that I needed to watch him. This was my second day of employment. This really made me weary. I was absolutely confused. He went on to say Mr. Nickelberry was like a brother to him, but they have worked together for years, but Mr. Nickelberry is disrespectful and if he continues he would throw him from the window. *** Turning and pointing to his office window.**
2.  **23 August 19:** After leaving Director Lamar office going over the Impact Statement and the requirements, Mr. Woodard called me back to his office (Not Terence) to discuss that he has a lot to train me on. He stated he had not been on vacation in close to a year because no one can perform in his role. Therefore, he needed for me to be spun up fast. He went on to state more derogatory comments about Mr. Nickelberry advising that he was "hard headed" and did not listen. He stated that he would begin to discipline him with write- ups if he continued to not sit still and listen as he talked to us. He used profane language. After possibly ten minutes of Mr. Woodard going on and on about Mr. Nickelberry, I chimed in and advised that I did not view Mr. Nickelberry actions as disrespectful. However, after being alongside him for a week, I noticed that the role we are working requires us to multitask, etc. There was a lot to be done. Mr. Woodard stated that is not the case. Mr. Woodard then begins to state to me that **1)** He was the reason I was hired **2)** It was SOLELY his choice **3)** Mr. Woodard stated to me that Director Lamar did not *MAKE* him hire me and again it was SOLELY his decision. I was flabbergasted! I did not know what to think after this. I left the office and continue with Mr. Nickelberry training for the day.

3. **26 Aug 19** More comments about Mr. Nickelberry and his past actions. Mr. Woodard asked me to come in the office at 10 AM to write some training points on Grievances, etc. We looked at one grievance and he began talking about a conversation he had with Director Lamar asking if "hiring" me would he be "hiring" his replacement. At this point, I was convinced I needed to speak with Director Lamar or someone due to me becoming uneasy about interacting. I spoke to Mr. Terence Nickelberry about his interactions with Mr. Woodard in efforts of gaining a better understanding of why Mr. Woodard actions were so negative. And to gain some sort of clarity as to why he was acting as if he controlled my employment. Mr. Nickelberry advised I would learn. That's all he stated. Then later that day he advised that Mr. Woodard pulled him in the office to tell him *NOT TO TRUST ME* and watch his back. Again, I was flabbergasted! This is my second week and I couldn't believe I was in such unprofessional environment. This date is when I exposed to Mr. Nickelberry my second day on the job, Mr. Woodard gave me the same ADVICE concerning him. He shrugged his shoulders and told me he was committed to training me correctly.

4. **28 Aug 19** I was called in the office and asked do I know who I work for. I explained yes. I work under you, Chief Woodard. Chief Woodard than began to go into a rant about he is the Chief and he has two Administrators and if he delegates a task it should be completed. I agreed. Terence was present. I went on to explain that Director Lamar tasked you Chief Woodard with composing an Impact Statement. We (I) stepped in to assist you because you struggled with the task; however, if we are in the field and you are at City Hall, it would be more feasible for you to prepare and brief the Director. This did not fair well and he began yelling at me. He advised me that he would go to 0 to 100 very quickly and a beast would come out. Terence dropped his head and attempted to leave office. I asked Terence to please stay and not leave until there was a resolve. Needless to say, there was not a resolve. Mr. Woodard reminded me for the 2nd time he was the reason I had employment with City of Memphis. I was his choice. Terence was as well. Not to mention, if his administrators couldn't do the job let him know. He stated this in front of Terence and advised that we were there to support him. Period. I stated I understood

5. **3-6 Sept 19** Most of my training was completed in field. All tasks assigned were completed and interaction with Mr. Woodard was on a need be basis. I spoke with Director Lamar EA and asked how I go about getting on Director Lamar calendar and what was the process for speaking with HR. Yvette Paschal inquired about what I needed assistance with; however, I was evasive and gathered info I needed.

6. **10 Sept 19** I spoke with EA via text at end of day asking to be placed on Director Lamar calendar immediately.

7. **13 Sept 19** Chief Woodard asked me to report to his office. I did. He began to talk about his dogs and daughter's graduation. It was after 4:30pm and I needed to see the Director prior to him leaving. Therefore, I stated to Chief Woodard, let me go catch Director Lamar before he leaves for the day. Chief Woodard made a comment, as I walked out his office that made me cringed! He stated as I was leaving his office that I had no time for him and I could just run on down to my *boyfriend* office! I crossed the threshold, and for a split second almost turned back, but instead I yelled back to the door, I heard exactly what you said. I walked down the hallway, by passed the Director office and went into the restroom. I was upset. Yvette came into the ladies' restroom and she learned of what just happened. I told her I needed to talk to Director ASAP. She said that I missed him. He left for the day.

8. **21 Sept 19 Chief Woodard hung the phone up in my face at 10:19AM I called back and inquired as to why he hung up. He stated he thought I was done talking. I advised I was not. He stated he was not understanding narrative in Impact Statement and needed clarity. I advised Chief I explained to you 5 times. He advised (yelling) you will explain to me as many times as I need you to until I understand. Then he went on to say; better yet come to City HALL and hung up again. I grabbed my counterpart (Terence) and ask if he would take me to City Hall. I was too weary to drive. We arrived at City Hall at 11am. Reported to Chief Woodard. His entire demeanor changed. He was nice. He was offering food and condiments that both Terence and I declined. We explained to him the matter at hand. This lasted an hour. Harold Mitchell was called into the office to assist with helping Chief Woodard understand. Not thirty minutes after this was resolved, Chief Woodard walked over to my cubicle stating in front of Terence that he and I must learn to deal with one another by learning each other's "ways". I did not respond. He attempted to lean over and grabbed me as I sat at my desk, massaging my shoulders and making kissy noises, I moved my entire chair and body from his embrace and he turned to Terence as I continued to type the email I was composing. When Terence left the cubicle, Chief Woodard doubled back and began to tell me about some female employee by the name of Rosalyn from Farrisview. I turned my chair and listened trying not to be rude. I had no idea what was about to happen next. Chief Woodard went on to say Rosalyn is one of many (two or three) I believe, female employees who have attempted to get him caught up in a sexual assault hearing and he beat them. He stated Roslyn and some former manager that he sold dresses to tried to set him up because he did not sleep with her. Something to the fact of she called him in from the field, took everyone in the barn out to lunch except him and Rosalyn, Rosalyn alleged that he hymned her up in a copier room. He knew the Director who was now the attorney and he beat that case. His *last* statement was much too much for me to carry on with working under this leadership without someone addressing him. Chief Woodard stated that he had not gotten this far in his career with the City of Memphis without knowing how to keep his DICK in his pants. I looked at him, covered my ears and turned back to my PC. He walked out. I immediately called for Terence to come back here and NEVER leave me alone whereas he is present. I told Terence verbatim what was said. Director LAMAR WAS OUT OF OFFICE. Deputy Director was not present either; meetings possibly. I am no longer comfortable. This has not been a Respectful Workplace my first 30 days. I had to release my anguish to Terence to carry on my work day. I asked Terence to please not say anything in fear of me being so new and I need my job. I just don't know want this type of behavior from Mr. Woodard to continue. Nor do I want to be retaliated against for asking for this to stop!**

9. **23 Sept 19** I set a time to speak with Director Lamar. Meantime, I am seriously avoiding any interaction with Chief Woodard. All Interaction is accompanied by Terence. Conversation is as clear and precise as I can manage in efforts of keeping my employment until someone can assist with my concerns. There was another breakdown in communication with Chief Woodard and Terence was aware. I asked him if he could refrain from being so aggressive and abrupt (unprofessional). He advised again, there is a beast in him that he struggles daily to keep at bay. I explained that I "only" want to report to work, do an excellent job, not ruffle feathers of anyone. If my inquires and proactiveness is causing his aggressiveness I need to know how we can fix this. He advised that I talk fast and he is methodical. I assured him, his actions had nothing to do with my speech. I speak clear and swifter than most because I stutter, but going forward communication would have to be key if we were to be successful in any endeavor. He advised that he felt as if I was leaving him out the loop of what ~~Terence and I was working~~ on. I stated to him that was not the case nor our intentions. If he would require us to outline our day to day task we would.

Respectfully,

Tonnie Ward



# City of
# Memphis
**TENNESSEE**

**JIM STRICKLAND**
**MAYOR**

**DIVISION OF PUBLIC**
**WORKS**

**Confidential**

**April 11, 2020**
***Re: Inappropriate Communication***

This letter is to document the conversation that transpired between Sr. Operations Administrator Anthony Woodard and I at approximately 1:03pm on Saturday, April 11, 2020.

I was in a sit-down meeting with Area Manager Kenneth Millen and Solid Waste Director Albert Lamar discussing operational resolves for the Midtown Area and the Area Manager concerns.

Sr. Operations Administrator Anthony Woodard knocked on the door and beckoned for me to step out. I excused myself from the meeting and Anthony advised me that he was leaving the facility. I asked if he completed the 2nd step grievances we discussed and he stated the grievances were completed.

Anthony went on to state the grievances were in the chair of my office and the office was locked. We both walked to the office door and I retrieved the grievances.

As we were about to exit, Anthony pushed the office door shut and walked in closer to me and stated if I heard the "Bellevue Rumor". I looked at him and stated no.

Also, I added I will not entertain any "foolishness".

Anthony begin to continue the "rumor" conversation by adding the rumor is "You have filed another ***sexual harassment*** complaint against me and I am being forced to resign"!

I looked at him in shock and reached for the door. I stated for the second time that I had not heard a rumor and I have _NOT_ filed anything against him. This bothered me.

I immediately reported back to the meeting with Director Lamar and Ken Millen.

As soon as meeting was adjourned I asked Director Lamar to speak with me privately. I repeated verbatim what Anthony had stated and how Anthony continues to involve me in conversations about past actions I do not want to re-live. I expressed hoe overwheling

this is becoming and I would like for this to stop. Anthony has been discussing me (allegations) and now rumors about harassment that I am aware of since early January. I want this to stop and I stated to Director Lamar that I want this to stop.

Director Lamar retrieved his cellphone from the holster and phoned Anthony on speaker phone. He questioned Anthony about all the comments that he was advised of and Anthony confirmed he did confront me with the harassment allegation.

Director Lamar asked Anthony why would he make those types of remarks to me and not address these rumors with him. Anthony stated he did not know why he confronted me.

*Tonnie Ward, Operations Administrator*
*Solid Waste Division*

FYI

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Thu 1/2/2020 4:00 PM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Woodard, Anthony <Anthony.Woodard@memphistn.gov>
Director Lamar,

When time permits, lets sit and talk about a concern that arose today. I definitely want to
ensure there will not be any preconceived notions about the tone or conversations that are
carried out between Anthony and I. I gave you a call a few moments ago; however Anthony
advised you stepped out of his office or office door.

Thanks!

Tonnie Ward
Solid Waste Collections Administrator
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
901.395.4942



## Fw: FYI

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Thu 1/2/2020 4:08 PM
To: Tonnie Ward <tonnieward@icloud.com>

fyi

I sent this email to Director Lamar after Anthony continued to address me on the phone stating something about my tone. I am not sure where he was attempting to go with the conversation, but as I explained to him prior and again this afternoon. I am hoping that my thoughts of thinking we could be able to work as a team after the outcome of my complaint in September.

Tonnie Ward
Solid Waste Collections Administrator
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
901.395.4942



---

**From:** Ward, Tonnie
**Sent:** Thursday, January 2, 2020 4:00 PM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Woodard, Anthony <Anthony.Woodard@memphistn.gov>
**Subject:** FYI

Director Lamar,

When time permits, lets sit and talk about a concern that arose today. I definitely want to ensure  there will not be any preconceived  notions about the tone or conversations that are carried out between Anthony and I. I gave you a call a few moments ago; however Anthony advised you stepped out of his office or office door.

Thanks!

Tonnie Ward
Solid Waste Collections Administrator
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
901.395.4942



## Re: FYI

**Ward, Tonnie** <Tonnie.Ward@memphistn.gov>
Thu 1/2/2020 4:22 PM
**To:** Woodard, Anthony <Anthony.Woodard@memphistn.gov>; Lamar, Albert <Albert.Lamar@memphistn.gov>

Anthony,

I was not comfortable with your persistence in stating to me that I needed to calm down and I needed to watch my tone with you were your exact words. Even after I explained to you twice that you were on speaker due to me handling route matters with my supervisor.

Lastly, there has not been an issue and I do NOT want one to arise; however your continued comments and accusations caused me to reach out to Director Lamar before there is a matter that arises. Thank you for your clarifications, but I still will be speaking to Director.

Regards,

Tonnie Ward
Solid Waste Collections Administrator
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
901.395.4942



---

**From:** Woodard, Anthony <Anthony.Woodard@memphistn.gov>
**Sent:** Thursday, January 2, 2020 4:15 PM
**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>; Lamar, Albert <Albert.Lamar@memphistn.gov>
**Subject:** RE: FYI

Tonnie there is no issue between you and I, I only stated what it sounded like to me on this end of the phone.
I asked you to calm down because you sounded like you were agitated. You explained that you were not and we moved on to discuss the  my question about the email you sent to Eric Sabatini. There is not nor has there been any issue between you and I.

**From:** Ward, Tonnie
**Sent:** Thursday, January 02, 2020 4:00 PM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Woodard, Anthony <Anthony.Woodard@memphistn.gov>
**Subject:** FYI

Director Lamar,

When time permits, lets sit and talk about a concern that arose today. I definitely want to ensure  there will not be any preconceived  notions about the tone or conversations that are carried out between Anthony and I. I gave you a call a few moments ago; however Anthony advised you stepped out of his office or office door.

Thanks!

Tonnie Ward
Solid Waste Collections Administrator
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
901.395.4942



## Accepted: Meeting

Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Mon 12/30/2019 8:49 AM

**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>

.

NO: 6125

# AFSCME LOCAL 1733 - AFL-CIO

## DR. MARTIN LUTHER KING LABOR CENTER

485 Beale Street • Memphis, TN 38103 • (901) 525-2458 • FAX (901) 525-4822

### GRIEVANCE FORM

Date _2-25-20_

Aggrieved Employee Name _Kimla Mathis-Sanders_

Union Member
Yes ☑  No ☐

Address and Phone Number _____ Loc. _Midtown 1733_

Class. (Title) _Crew Chief_  Shift _7am-3pm_  Date Employed _5-23-12_

Art. and/or Section of Contract Violated _Preamble Article 1 and Article 16_

Brief Statement and Nature of Grievance _Management has wrongly stated that opportunities for advancement positions was posted on 1-03-20 and remained posted for the required 10 work day period. I watched the board deligently and I never saw the positions posted. Management has always shown extreme favoritism when it comes to opportunities for advancement._

Remedy or Disposition Requested _Because management has failed to properly post the position. I am requesting an interview for the supervisor position I have over 3 years acting supervision experience._

Aggrieved Employee's Signature _Kimla Mathis Sanders_  Steward _L-7 E. K-t_

Chief Steward _Nathaniel Sence_  Date Presented _____

Appropriate
Employer Rep. _____

Result and Disposition _After investigating this grievance, Preamble, Article 1  Article 16, Section 1 and Section 6 of the MOU has not been violated._

It was determined that the grieved employee was not equally qualified to the selected candidates for the permanent position as determined by the testing conducted by the Interview Panel and representatives from Personnel Services Testing/Recruiting Department.

The candidates were selected based on the senior most qualified (such qualification must be based upon job specific education, training and experience). Therefore, seniority does not have application since he was not the senior most qualified candidate.

Therefore, this grievance is respectfully denied. (See Articles Attached)

Supervisor's Signature _____

Date Answered _____  Answer Accepted (Initials) _____

Answer Rejected (Initials) _____

**WHITE-EMPLOYER'S COPY   YELLOW-LOCAL UNION'S COPY   PINK-STEWARD'S COPY**

## Phone call

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Wed 4/15/2020 10:42 AM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>

I'm confused. You told me to not call Anthony or take his calls.

He just called and I didn't answer. Am I supposed to?

Get Outlook for iOS

# Terence Departure/ Record of Occurrence

### Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Mon 6/15/2020 2:12 PM

**To:** DeGraffreed, Delicia <Delicia.DeGraffreed@memphistn.gov>; Davis, Philip <Philip.Davis@memphistn.gov>;
Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Hardeman, Kim <Kim.Hardeman@memphistn.gov>; Nickelberry, Terence E.
<Terence.Nickelberry@memphistn.gov>; Morrow, Diane <Diane.Morrow@memphistn.gov>

Team,

While speaking with Terence at 1:43pm during a coaching session of his requirement to
report to lunch and scheduled breaks on time, Terence notified me that he was feeling
severely ill. Terence stood up and took his mask off taking deep gasps for air and seemed to
be hyper ventilating.

I immediately stood up from behind the desk and grabbed my cellphone to call for assistance
(EMS). Terence was still holding his abdomen and leaned on the counter next to the door and
stated he needed air and was feeling horrible. I stated to Terence I could not allow him to
leave after he advised me of his present condition. And I needed to call for help. Terence
declined an EMS.  Terence stated he needed to walk and get air; therefore he took the long
route to his office from the outside.

Immediately I called for Ms. Diane Morrow to grab the blood pressure machine and take his
pressure/ temperature. She was able to confirm his blood pressure was 158/101. Terence
stated he would catch a  breather and report to his personal doctor now. Diane observed
Terence walking without holding his abdomen and speaking clear on the phone without
gasping for air. He stated to Diane he made a appointment to see his physician and was
leaving for the day. Terence confirmed this was not an OJI incident. Therefore Standard was
not contacted.

Terence has been advised to keep me posted of his condition and send documentation of his
doctors visit.

Respectfully Submitted,


Tonnie Ward
Operations Administrator
Solid Waste Division
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
Office: 901.636.6831
Mobile: 901.395.4942



# FF Charge Notification (Ken Millen)

Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Mon 6/15/2020 6:28 PM

**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Davis, Philip <Philip.Davis@memphistn.gov>; DeGraffreed, Delicia <Delicia.DeGraffreed@memphistn.gov>

Sir,

Per our conversation, Ken's failure to follow protocol with Danny James warranted A FF Notification to investigate the following:

1. Why wasn't this employee LWOP and documentation sent out to drop from payroll and others were
2. Why was this employee permitted to return to work and work after he had been LWOP 4+ DAYS
3. Why did Ken attempt to present senior leadership with a FF Notification for this employee when he was permitted t return to work and any discipline that would have taken placed would be over turned
4. Why did Ken submit s statement listing all the reason as to why he allowed this employee to work and others he moved quickly with sending proper documentation
5. Why did Ken generate FF Notification listing Anthony Woodard and Clarence Morrow of which both employees are no longer with the city

I am validating his FF Administrative Charge Letter and would like to use the following violations:

Work Rules

- 1.14 Quality and Quantity of Work
- 1.10 Notification Requirement
- 2.00 Employee Conduct
- 2.02 Compliance of Orders
- 2.06 Responsibility
- 3.15 Performance Standards

Personnel Policy

- PM-38-02 Grounds For Disciplinary Actions

Respectfully,

Tonnie Ward
Operations Administrator

Solid Waste Division
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
Office: 901.636.6831
Mobile: 901.395.4942



## Concerns:

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Tue 6/16/2020 10:07 AM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>
**Cc:** Davis, Philip <Philip.Davis@memphistn.gov>; DeGraffreed, Delicia <Delicia.DeGraffreed@memphistn.gov>

1 attachments (298 KB)
Statements.pdf;

Director Lamar,

Midtown Supervisors reported to me last week on Friday, 12 June and Monday afternoon, 15 June concerning Terrence Nickleberry making comments that have them under the impression he is trying to stop the operation. I spoke with a steward (Kristy Clark ) after she called my phone multiple times. She advised that Terence Nickleberry stated he was about to shut down all trucks if they had lights on and there would not be any work done in Solid Waste. She went on to state that he advised her and a group of others (stewards) that pre-trip should take 45 minutes and that's what they should be doing daily..

I advised her that I would peak with Terence about the shutting down the operation by downing trucks and not to worry about any of the other comments as of now until I get clarity. The concerns is this:

1. Friday, 12 June Terence stated in the presence of Diane Morrow that employees are calling him at home and called him while he was off asking if they should work. If he wanted to he could be the one to stop the employees from laying down because they are tire of Director Lamar
2. Friday, 12 June Terence stated in the presence of Diane Morrow that I should and must take my hands off the operation and allow him and Ken to run the operation as they have in the past. I stated to him no! That will not happen your roles and responsibilities are not that of an administrator and you (Terence) are failing to perform as an Area Manager.
3. Friday, 12 Jun Terence supervisor team advised that its difficult for them to work due to Terence continuing making changes to the operations set-up to ensure performance metrics are met, his continued interruption of SEO in the field causing delay in production and constant talk to them that they are afraid of me.

At this point, Terence isn't at work to address the concerns as a group as scheduled yesterday; however Terence has stated to me of his ability to shut down the operation and I responded to him making comments such as those were not professional and violates Work Rules/ Personnel Policy. Immediately he corrected the statement and made a remark that he would not do it, but he could. Terence interaction with employees has become disruptive to SW and now its bleeding over to the supervisors.

Each of them gave a statement in regard to Monday and Thursday; however they are very uncomfortable with me asking and advising I would be letting senior leadership know of the ongoing behavior of Terence since his return.

Tonnie Ward
Operations Administrator
Solid Waste Division
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
Office: 901.636.6831
Mobile: 901.395.4942



## Fw: ORAL - Ken Millen

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Tue 6/23/2020 5:49 PM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>

📎 1 attachments (3 MB)
SKM_C45820062315282.pdf;

Director,

I am confused. I saw the email you asked me to review from Phyllis (HR) and Kimberly Taylor (EDI); however disciplinary process was followed. The employees were accompanied by another member of management and I allowed each the opportunity to comment after we discussed the oral. The signed copy was forwarded to senior leadership (Admin Support/Director) at 3:30pm.

Ken contacted EDI immediately after he left the office and made me aware that he would be doing so. I encouraged him to do so because the reprimand would remain due to the occurrence that took place and the outcome afterwards.

Respectfully Submitted,

Tonnie Ward
Operations Administrator
Solid Waste Division
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
Office: 901.636.6831
Mobile: 901.395.4942



**From:** Morrow, Diane <Diane.Morrow@memphistn.gov>
**Sent:** Tuesday, June 23, 2020 3:32 PM
**To:** DeGraffreed, Delicia <Delicia.DeGraffreed@memphistn.gov>
**Cc:** Lamar, Albert <Albert.Lamar@memphistn.gov>; Davis, Philip <Philip.Davis@memphistn.gov>;
Ward, Tonnie <Tonnie.Ward@memphistn.gov>; Bailey, Rolanda <Rolanda.Bailey@memphistn.gov>
**Subject:** ORAL - Ken Millen


*Diane Morrow*
*Support Services Supervisor*
*Solid Waste Dept.-Bellevue/Midtown*
*City of Memphis*
*901-636-7653*
*901-722-5415 (fax)*

---

**From:** copier@memphistn.gov <copier@memphistn.gov>
**Sent:** Tuesday, June 23, 2020 3:28 PM
**To:** Morrow, Diane <Diane.Morrow@memphistn.gov>
**Subject:** Message from KM_C458



# CITY OF MEMPHIS GOVERNMENT
## DISCIPLINARY ACTION FORM

**Issued Date: 06/23/2020**

## NOTICE OF ORAL REPRIMAND

| Employee | **Kenneth Millen** | Division/Service Center | Solid Waste - Midtown |
|---|---|---|---|
| Operations Administrator | Tonnie Ward | Job Position | Area Manager |

| Represented Employee | | Yes | | No | If Yes, Name of Union | AFSCME |
|---|---|---|---|---|---|---|
| | | | | | Steward Representing Employee | |

**Type of Violation (Insert X in appropriate box):**

| | Absenteeism | | Tardiness | X | Insubordination | | Safety |
|---|---|---|---|---|---|---|---|
| | Gross Misconduct | | Quality of Work | X | Other, Explain Below | | |

**Comments / Other:**

| Not Applicable |
|---|

**Type of Action (Insert X in appropriate box):**

| X | Oral Reprimand | (Department File Only) |
|---|---|---|

| **List Dates or Previous Actions: none** |
|---|

Send a copy of this completed form to the attention of the Division of Human Resources – Data Management Service Center located in City Hall, Room 1B-38 to be filed in employee's Master File.

**List Applicable City of Memphis Personnel Policies Violated:**

### I.   GROUNDS FOR DISCIPLINARY ACTION – PM-38-02
**Section: 38-00, DISCIPLINE AND APPEALS**

Employees of City of Memphis Government, who fail to abide by established rules, are subject to disciplinary action.   Disciplinary action may be taken for, but not limited to the following:

1. The employee has violated a provision set forth in City of Memphis <u>Personnel Manual Policies and Procedures</u> or provision set forth by the employee's Division or department.
2. The employee has violated a lawful or official regulation or order or refused to accept an assignment from an authorized supervisor and the failure to obey amounts to insubordination.
3. The employee is incompetent, inefficient, and unprofessional in demonstrated work performance of their assigned job duties.
4. The employee's conduct and/or behavior toward citizens, public charges, vendors, contractors, **management personnel**, fellow employees, etc., had been offensive,

1

## II.   DIVISION WORK RULES

## ARTICLE 2: CONDUCT AT WORK

### EMPLOYEE CONDUCT
The City of Memphis and the Division expects all employees to behave in a professional manner. Employees shall conduct themselves in a way that best represents City Government while also exercising appropriate demeanor and judgment. Employees shall also conduct themselves in such a manner consistent with the Division Work Rules. Violation may resu lt in disciplinary action, up to and including termination of employment.

### COMPLIANCE OR ORDERS
Employees shall comply with all orders of supervisors and any other approved authorities. Employees shall perform all orders as requested and directed in a prompt and efficient manner. Employees shall not verbally abuse supervisors because of orders given, nor unreasonably questio n or fail to perform work or directives given.

## ARTICLE 3: GENERAL POLICY

### READ AND UNDERSTAND CITY AND DIVISION POLICIES, PROCEDURES AND WORK RULES
It is the employee's responsibility to read and understand all City and Division Policies, Proceduresand Work Rules. Each employee will be issued a copy of this document upon employment with the   City.   Additionally,   in   New   Hire   Orientation   the   Human   Resource Department will provide information on the City's policies and procedures and their location on the City's website. If an employee does not understand a particular policy or procedures, they must contact their immediate supervisor who will explain the policy.

### VIOLATION OF ANY POLICY, PROCEDURE OR RULE AFTER WARNING
It is impossible to list every item that would be a violation of any policy, procedure, rule or practic e. To that end if an employee has been counselled concerning an offense or violation not expressly listed the employee is still subject to receiving discipline for the offense. The type of discipline wil l depend on the magnitude of the infraction.

### PERFORMANCE STANDARDS
The SW Division in order to ensure efficient and satisfactory levels of services are provided to citizens shall as needed determine performance standards for any employee. Accordingly, departments, bureaus, service centers, areas, zones, or any other form of structural management will utilize such performance standards as required to track and manage employee performance in a manner consistent with the delivery of services. Employees in such positions will be required to perform in full compliance with standards set by the departments, bureaus, service centers, areas, zones, or any other form of structural management.

---

**List Details of the Incident that lead to this action being taken.**
 **Include Date, Time, Description and Impact on the City/Division of this Incident:**
 **June 22, 2020 Ken's willful requests to have Shirley Johnson reassign personnel after she was**

instructed not to exhibited injudicious and could have impacted the SW operations negatively. Ken deliberately refrained from forwarding his required asset and morning report for the layout of B3 to prevent Administrator from knowing of the unapproved removal personnel.

**Employee Statement / Response:**

Refused to Sign; Employee statd he did not make shirley reassign Personnel

**Corrective Action Plan**
Immediately, the employee will comply with all orders given and will not "usurp" authority of the Operations Administrator by intentionally encouraging or requesting other members of leadership or employees to perform tasks that instructions were given not to. If this type of behavior continues the employee will be issued progressive discipline up to termination.

**APPEALS INFORMATION:**
An employee may appeal internally to his/her immediate Supervisor within ten (10) calendar days after disposition of infractions.  The internal appeal process is detailed in PM 38-03.  A represented employee may file a grievance within the timeframe allotted within his/her respective Memorandum of Understanding.

I acknowledge receipt of this disciplinary action and that its contents have been discussed with me. I understand that my signature does not necessarily indicate agreement.

Ken Millen
_____
Employee's Name (Print)

# Refused to Sign
_____
Employee's Signature

6/23/20
Date

Tonnie Ward
_____
Administrator Name (Print)

_____
Administrator Signature

Witness if required

6/23/20
Date

Note:  If employee refuses to sign have it witnessed by another member of management and have them sign on the Witness line.  On the employee signature line write the notation - Employee Refused to Sign See Witness Signature.

## Fwd: B3 layout 06/22/20

### Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Tue 6/23/2020 4:04 AM

**To:** Millen, Ken <Ken.Millen@memphistn.gov>; Johnson, Shirley <Shirley.Johnson@memphistn.gov>
**Cc:** Davis, Philip <Philip.Davis@memphistn.gov>; DeGraffreed, Delicia <Delicia.DeGraffreed@memphistn.gov>;
Hardeman, Kim <Kim.Hardeman@memphistn.gov>
**Bcc:** Lamar, Albert <Albert.Lamar@memphistn.gov>

Shirley/ Ken,

Expect to meet with me as soon as you arrive this morning concerning yesterday's B3 layout and reallocation of an employee.

Ken,

This layout is required of areas managers daily NLT 8am. I advised you at 8:27am Monday morning to submit. You stated you would when you make it to the truck; which you never did.

You were contacted at 10:47am, 12pm and 3pm to forward your B3 set up; which you finally completed at 3:12pm and submitted. EOD. I advised you this was not acceptable and you must submit your data on time as all other Area Managers are in compliance and this is ongoing for Area B for approximately 3+ months.

This is not acceptable. After your submitting, and I reviewed, I learned that Shirley Johnson reallocation of personnel (Tyson White)  was completed without my knowledge and opposite instructions I clearly gave. This constitutes insubordination and violated Personnel Policy Manual.

I spoke with you both concerning this matter yesterday afternoon in my office with the group and with Shirley individually. This behavior from an Area Manager or Zone Supervisor is not acceptable. It will be documented and progressive discipline followed if it continues.

As an Area Manager, I would encourage you moving forward to not "usurp" authority or direction given to employees as it relates to operational layout. This type of behavior impacts the operation negatively.

Ken Your delayed submission of data and request to Shirley to remove a TD to a CC position poses (2) questions for me:

1. Was this delay intentional to prevent me from being aware that my instructions had been disregarded?

2. How often are actions such as these taking place?

Secondly, this email will be utilized to document the conversation and the actions of you and Shirley on 22 June.

As well as, Oral Coaching Reprimands generated for future reference to ensure progressive discipline is followed if this occurrence or similar occurrence take place in the future.


Let's meet in my office briefly upon 0600 arrival, so much time will not be taken away from your 0630 or 0645 startup meetings.

Respectfully Submitted,

Tonnie Ward

Sent from my iPhone

Begin forwarded message:

> **From:** "Millen, Ken" <Ken.Millen@memphistn.gov>
> **Date:** June 22, 2020 at 3:12:37 PM CDT
> **To:** "Ward, Tonnie" <Tonnie.Ward@memphistn.gov>, "Colbert, Yvonne L."
> <Yvonne.Colbert@memphistn.gov>, "Ward, Marquette J."
> <Marquette.Ward@memphistn.gov>
> **Subject: B3 layout 06/22/20**



> B3
> Garbage
> 3179 Rosie Pirtle D James, J Hunt
>
> s5022 David Kyle. M Thomas   Telly James.
>
> ss3170 Henry Johnson Larry Naylor Eric Wilkerson.
>
> s3163 David Corum Jerry Holt Andrew Boyland
>
> s3023 Charles Netters George Yancy Leon Dean

one split route

Recycle
s3526
Tyson white Terrill White M Cast

S3137
Mark Hill Keith Poole

s1234
Damon Minor Danita Green Velma Cooper.

from my Verizon, Samsung Galaxy Tablet

## Re: Ken PIP

Ward, Tonnie <Tonnie.Ward@memphistn.gov>
Fri 6/26/2020 2:53 PM
**To:** Lamar, Albert <Albert.Lamar@memphistn.gov>

📎 1 attachments (46 KB)
Kenneth Millen PIP June 29, 2020.docx;

Director,

Will you please assist me with accurately categorizing Ken's goals and areas of improvements? There has been so many occurrences observed and discussed over the past 3 to 6 months concerning this employees competency level, professional behaviors/ comments and a vast number of other infractions. I am having difficulty outlining the PIP that's intended to correct and improve his performance w/o seeming as if my intent is to tarnish his ability convert. Help!!!!!

Tonnie Ward
Operations Administrator
Solid Waste Division
125 N. Main St., Room 628
Memphis, TN 38103
Tonnie.Ward@memphistn.gov
Office: 901.636.6831
Mobile: 901.395.4942



# PERFORMANCE IMPROVEMENT PLAN (PIP)

**Employee's Name:** Kenneth A. Millen      **DATE:** June 29, 2020

**Title:**  Area Collections Manager (Midtown)      **Division/Department:** Solid Waste Management

**Purpose:** To provide the opportunity to assist a management employee in understanding the specific improvements required in his performance as it relates to Competency, Quality and Quantity of Work, Ability to work within a team environment focusing on productive results of the Solid Waste (Operations) Division, Conflict Management, Professional Work Ethic,  and Positive Influence on Workforce.  This performance improvement plan is issued as a remedy to charges outlined in the June 19, 2020 Fact Finding Hearing and recent observations of employee substandard performance, unprofessional behavior and unethical comments. The employee consistent inability meet timely requests of administrative duties or correspondence of emails, grievances, FF documentation, etc. has become a frequent re-occurrence with little to no improvement being exhibited by the employee. This plan is intended to document your improvement in performance competency, professionalism and productivity within Solid Waste (Operations) Division.  If at any point you fail to meet the required standards and expectations of your position, further disciplinary action may be required up to termination.

6/29/2020 Implementation
7/13//2020 1st Follow-Up
7/27/2020 2nd Follow-Up
8/11/2020 3rd Follow-Up
8/25/2020 – Final Review

IDENTIFY PERFORMANCE/BEHAVIOR CONCERNS:  List specific problems, issues, occurrences, dates, times, etc.

1. **Quantity of Work:** On-Going Occurrences documented from March 2020- Present;   (Untimely completion of daily tasks assigned); limited to no response or correspondence to emails pertaining to operational needs/ implementations to improve service quality, substandard   involvement with SW operations daily production plans of execution; expected performance and positive engagement within the Solid Waste operational successes  has been very inconsistent, inability to communicate in group settings and complete tasks in a timely manner is below expectations for an Area Manager.

2. **Quality of Work:** Periodically; documented from January 2020- June 2020 (Failure to meet Solid Waste Division Standards) Tasks delegated were either not completed or completed after the expectation set for completion expired. Poor Performance and Teamwork exhibited periodically when employee disagrees with senior leadership instructions or suggestions that differ from past administration, very limited output or effort put forth when employee ideas or recommendations are not utilized within the operation, employee disconnects himself from any decision or execution of tasks that's not favorable (in his opinion) for the employee.

3. **Conflict Management:** May 8, 2020; Displacement of emotions, insubordinate behavior, inappropriate comments and allegations were made by employee during a leadership roundtable when employee disagreed with upcoming planning phases for SW as it pertained to management expectations, supervisor's responsibility, punctuality, and interpersonal relationships / positive interactions with hourly employees. June 23, 2020; Employee exhibited repeat behaviors from May 8, 2020 with a discussion pertaining to management expectations, punctuality and identifying the expectations of the Area Manager role.

4. **Competency:** Inability to enforce MOU, Personnel Policy or City Work Rules fairly amongst employees reporting directly or indirectly to employee, Breach of Confidentiality; Using communication on a need to know basis only, Inability to actively participate in strategic planning phases for SW seasonal volume

5. **Positive Influence on Workforce:** Too much focus on what is wrong within operational guidelines and offer little to no resolve to building better work relationships with peers or senior leadership, Lack of positive feedback

PERFORMANCE/BEHAVIOR CONCERN DEFINITION: List specific reason(s) why performance improvement plan is being developed.
1. To evaluate employee engagement with peers, subordinates and senior management. To take record of employee punctuality, attendance and presence within the operation as a whole. Build a rapport with the employee to improve time-management skills, ability to prioritize tasks and improve individual performance.
2. To improve employee accuracy, thoroughness, productivity, competence and ability to meet deadlines and responsiveness to time sensitive emails/ tasks.
3. Coach and Develop employee

IMPROVEMENT REQUIRED: List specific actions that the associate must take to correct the situation or behavior.

SUGGESTED MEANS OF IMPROVEMENT: List specific goals, objectives or performance and measurement standards that are expected of the associate and <u>specific</u> time frame(s) for achievement.

Employee's Comments:

It must be understood by Terence Nickelberry that this PIP is being developed for the primary purpose of improving employee individual performance and behaviors expected from an employee in his titled role. This performance improvement plan in intended to assure the employee is provided an opportunity to understand the factors that are important to potential achievement of the improvements described above; Employee is encouraged to ask questions, request assistance from his manager, at any time to ensure the completion of the steps above.

(Note: This plan is not all inclusive of all performance issues that may exist but focuses on key areas of improvement required within a specific time frames.)

# 1st Follow-Up Session

**PIP Manager:  Name**                                    **Follow Up Manager:  Name**

**Date of Follow-Up:  Date**                        **Date Scheduled for Next Follow-Up:  Date**
                                                       (Sufficient time should be allocated to allow for improvement)

Progress on this PIP has been:

☐ Below Expectations          ☐ Meets Expectations          ☐ Exceeds Expectations

Summary: List below the specific improvements that have been made, as well as any areas that are below expectations:

1.

Next Steps:  List below the next steps to be taken:  This list should be SMART - Specific, Measurable, Action oriented, Results oriented and Time bound.

1.

2.

Reviewing Manager's Overall Comments on Progress or Lack of Progress. This section requires comments.

Recommendations:  List below any additional training (internal or external), mentoring from another manager, and/or days of observing another operation required of the Employee before next session.

Reviewing Manager's Signature:

DATE ISSUED:


_____           _____

Immediate Supervisor's Signature               Division Director (or designee) Signature

---

By signing this Performance Improvement Plan, I acknowledge that I have received it and that it has been thoroughly explained to me.  I have been permitted to ask questions about any areas that I do not understand.


_____      _____

Employee Signature                         Date

# 2nd Follow-Up Session

**PIP Manager:  Name**                                    **Follow Up Manager:  Name**

**Date of Follow-Up:  Date**                          **Date Scheduled for Next Follow-Up:  Date**
                                                          (Sufficient time should be allocated to allow for improvement)

---

Progress on this PIP has been:

☐ Below Expectations          ☐ Meets Expectations          ☐ Exceeds Expectations

---

Summary: List below the specific improvements that have been made, as well as any areas that are below expectations:

1.

2.


Next Steps:  List below the next steps to be taken:  This list should be SMART - Specific, Measurable, Action oriented, Results oriented and Time bound.

1.

2.


Reviewing Manager's Overall Comments on Progress or Lack of Progress. This section requires comments.

Recommendations:  List below any additional training (internal or external), mentoring from another manager, and/or days of observing another operation required of the Employee before next session.

Date:_____

By signing below, I am acknowledging that the information above has been discussed with me and that I have received a copy of this document. Further, I am acknowledging that I have been allowed and encouraged to ask questions about anything that I do not understand.

Date:_____

Employee Signature

## 3rd Follow-Up Session

**PIP Manager:  Name**                                      **Follow Up Manager:  Name**

**Date of Follow-Up:  Date**                              **Date Scheduled for Next Follow-Up:  Date**
                                                                        (Sufficient time should be allocated to allow for improvement)

Progress on this PIP has been:

☐ Below Expectations          ☐ Meets Expectations          ☐ Exceeds Expectations

Summary: List below the specific improvements that have been made, as well as any areas that are below expectations:

1.

2.

Next Steps: List below the next steps to be taken:  This list should be SMART - Specific, Measurable, Action oriented, Results oriented and Time bound.

1.

2.

Reviewing Manager's Overall Comments on Progress or Lack of Progress. This section requires comments.

Recommendations:  List below any additional training (internal or external), mentoring from another manager, and/or days of observing another operation required of the Employee before next session.

Reviewing Manager's Signature

_____ Date:_____

By signing below, I am acknowledging that the information above has been discussed with me and that I have received a copy of this document. Further, I am acknowledging that I have been allowed and encouraged to ask questions about anything that I do not understand.

_____ Date:_____
Employee Signature

Page 9 of 9

## RE: Follow-up

**Tannera Gibson** <tgibson@bpjlaw.com>

Wed 6/9/2021 2:06 PM

**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>

**CAUTION:** This email originated outside of the **City of Memphis** organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ms. Ward,

My investigation has concluded, so I'm unable to have further discussion.  I'd recommend reaching out to EDI.

Tannera George Gibson
Burch, Porter & Johnson, PLLC
130 North Court Ave | Memphis, TN 38103
Direct: 901-524-5152 | Main: 901-524-5000
tgibson@bpjlaw.com | Bio | vcard

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Sent:** Wednesday, June 9, 2021 10:51 AM
**To:** Tannera Gibson <tgibson@bpjlaw.com>
**Subject:** Re: Follow-up

Ma'am,

Will you be able to give me a call at your soonest? I need to speak with you.

*Tonnie M. Ward*
*Operations Administrator*
*Division of Solid Waste Collections*
*City of Memphis*
*125 Main Street, 6th Floor – Room 628*
*Memphis, TN 38103*
*901.636.6831 Office*
*901.395.4942 Mobile*
*901.636.9893 Fax*
tonnie.ward@memphistn.gov

## RE: Follow-up

**Ward, Tonnie <Tonnie.Ward@memphistn.gov>**

Wed 6/9/2021 2:26 PM

**To:** Tannera Gibson <tgibson@bpjlaw.com>

Yes ma'am. I will do so immediately. Have an amazing day!

**From:** Tannera Gibson [mailto:tgibson@bpjlaw.com]
**Sent:** Wednesday, June 9, 2021 2:05 PM
**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Subject:** RE: Follow-up

**CAUTION:** This email originated outside of the **City of Memphis** organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ms. Ward,

My investigation has concluded, so I'm unable to have further discussion.  I'd recommend reaching out to EDI.

Tannera George Gibson
Burch, Porter & Johnson, PLLC
130 North Court Ave | Memphis, TN 38103
Direct: 901-524-5152 | Main: 901-524-5000
tgibson@bpjlaw.com | Bio | vcard

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Sent:** Wednesday, June 9, 2021 10:51 AM
**To:** Tannera Gibson <tgibson@bpjlaw.com>
**Subject:** Re: Follow-up

Ma'am,

Will you be able to give me a call at your soonest? I need to speak with you.

*Tonnie M. Ward*
*Operations Administrator*
*Division of Solid Waste Collections*
*City of Memphis*
*125 Main Street, 6th Floor – Room 628*
*Memphis, TN 38103*
*901.636.6831 Office*

## FW: Follow-up

**Ward, Tonnie** <Tonnie.Ward@memphistn.gov>
Wed 6/9/2021 2:33 PM

**To:** Suttlar, Erika <erika.suttlar@memphistn.gov>
**Cc:** Jones, Darius <Darius.Jones@memphistn.gov>

Ms. Erika,

See Com legal response below.

Were you able to reach out to EDI Monday for a report to issue me concerning the investigation and all the charges that were filed against me? I am headed out to my appointment, but if you will, I would like a documented report pertaining to the investigation and charges filed.

**From:** Ward, Tonnie
**Sent:** Wednesday, June 9, 2021 2:27 PM
**To:** Tannera Gibson <tgibson@bpjlaw.com>
**Subject:** RE: Follow-up

Yes ma'am. I will do so immediately. Have an amazing day!

**From:** Tannera Gibson [mailto:tgibson@bpjlaw.com]
**Sent:** Wednesday, June 9, 2021 2:05 PM
**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Subject:** RE: Follow-up

**CAUTION:** This email originated outside of the **City of Memphis** organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Ms. Ward,

My investigation has concluded, so I'm unable to have further discussion.  I'd recommend reaching out to EDI.

Tannera George Gibson
Burch, Porter & Johnson, PLLC
130 North Court Ave | Memphis, TN 38103
Direct: 901-524-5152 | Main: 901-524-5000
tgibson@bpjlaw.com | Bio | vcard

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Sent:** Wednesday, June 9, 2021 10:51 AM

**To:** Tannera Gibson <tgibson@bpjlaw.com>
**Subject:** Re: Follow-up

Ma'am,

Will you be able to give me a call at your soonest? I need to speak with you.

*Tonnie M. Ward*
*Operations Administrator*
*Division of Solid Waste Collections*
*City of Memphis*
*125 Main Street, 6th Floor – Room 628*
*Memphis, TN 38103*
*901.636.6831 Office*
*901.395.4942 Mobile*
*901.636.9893 Fax*
tonnie.ward@memphistn.gov

# FW: Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Wed 6/9/2021 1:44 PM

**To:** maloneward08@icloud.com <maloneward08@icloud.com>; MALONEWARD08@YAHOO.COM <MALONEWARD08@YAHOO.COM>

**From:** Suttlar, Erika
**Sent:** Tuesday, June 8, 2021 10:15 AM
**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>
**Subject:** RE: Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Of course, they would contact you if you needed to do anything further.  I will contact EDI to see if they have a report to give you.

*Erika D. Suttlar, JD*
*HR Business Partner Manager*
*Division of Solid Waste*
*City of Memphis*
125 Main Street, 6th Floor – Room 628
Memphis, TN 38103
901.636.6833 Direct
901.581.0378 Mobile
901.636.3861 Fax
erika.suttlar@memphistn.gov

                          *Stay Positive.  Test Negative.*

**From:** Ward, Tonnie
**Sent:** Tuesday, June 8, 2021 10:12 AM
**To:** Suttlar, Erika <erika.suttlar@memphistn.gov>
**Subject:** RE: Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Correct. That's what you advised yesterday during the recorded TEAMS call and what you advised 2 June when I called you via phone and asked about the investigation that has been ongoing for over 6+ months.

You stated you have no information about the investigation or its outcome. I advised you that if the investigation is over I had not been contacted by CoM legal (Tienerra Gibson) nor EDI.

At this point in the conversation you advised if I had not been contacted it's possible they have nothing else to investigate and I was not told to do anything further.

Sent from Mail for Windows 10

**From:** Suttlar, Erika
**Sent:** Tuesday, June 8, 2021 9:02 AM
**To:** Ward, Tonnie
**Subject:** RE: Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Thanks, Tonnie for the recap.  But, I want to make sure that I am clear that I have no information about the investigation and its outcome.  I can't speak to what was validated.

*Erika D. Suttlar, JD*
*HR Business Partner Manager*
*Division of Solid Waste*
*City of Memphis*
125 Main Street, 6th Floor – Room 628
Memphis, TN 38103
901.636.6833 Direct
901.581.0378 Mobile
901.636.3861 Fax
*erika.suttlar@memphistn.gov*

***Stay Positive.   Test Negative.***

**From:** Ward, Tonnie
**Sent:** Tuesday, June 8, 2021 5:53 AM
**To:** Suttlar, Erika <erika.suttlar@memphistn.gov>
**Subject:** Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Good Morning Ms Erika,

This email correspondence will serve as my personal record fir future reference and follow up of the 1pm TEAMS call that HR/ EDI (you) conducted with me concerning the following:

- obtaining the MPD Police report info for the threats made via text and phone by James Sherrod 1 June 21
- My plans to follow through with an order of protection for this individual actions, comments
- Confirmation that the verbiage in the text is similar to the verbiage utilized by CoM leadership in their comments and charges filed on me
- Revisited the fatal threats of someone taking a sharp knife like object and X'ing out my face on communication board writing derogatory comments and the threats were filed not investigated. As of yesterday, you advised you will look into the matter  that occurred months ago and complete a full investigation
- Advised that you were not knowledgeable of any information concerning the ongoing legal investigation of the erroneous hostile work environment, retaliation and harassment charges made on me in Dec. 2020, the pending charges filed by  AFSCME Union Labor Secretary Mr. OShawn Smith in conjunction w/ CoM Management working with AFSCME employees
- CoM Legal has not contacted me at all to give any details or information pertaining to the investigation, but the investigation has been closed

- Your advisement that you would follow up with EDI concerning the outcome because you are not privy to any of the information pertaining to the investigation, but if I was not contacted than possibly ALL the charges filed were not validated
- Revisited the threats reported by CoM Sr. Manager pertaining to his spouse reporting to CoM property or any venue to cause me harm for delivering ADAAA documentation to her spouse (HOR) Home of Record and who advised me to allow CoM leadership and legal to handle the resolution of the four continuous threats made and ultimately the erroneous harassment charges filed

Thanks,
Tonnie

Get Outlook for iOS

## RE: Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Suttlar, Erika <erika.suttlar@memphistn.gov>

Tue 6/8/2021 9:02 AM

**To:** Ward, Tonnie <Tonnie.Ward@memphistn.gov>

Thanks, Tonnie for the recap. But, I want to make sure that I am clear that I have no information about the investigation and its outcome. I can't speak to what was validated.

*Erika D. Suttlar, JD*
*HR Business Partner Manager*
*Division of Solid Waste*
*City of Memphis*
125 Main Street, 6th Floor -- Room 628
Memphis, TN 38103
901.636.6833 Direct
901.581.0378 Mobile
901.636.3861 Fax
erika.suttlar@memphistn.gov

*Stay Positive.  Test Negative.*

**From:** Ward, Tonnie
**Sent:** Tuesday, June 8, 2021 5:53 AM
**To:** Suttlar, Erika <erika.suttlar@memphistn.gov>
**Subject:** Follow up Investigation of Violent Threats, Hostile Work Environment and Workplace Harassment

Good Morning Ms Erika,

This email correspondence will serve as my personal record fir future reference and follow up of the 1pm TEAMS call that HR/ EDI (you) conducted with me concerning the following:

- obtaining the MPD Police report info for the threats made via text and phone by James Sherrod 1 June 21
- My plans to follow through with an order of protection for this individual actions, comments
- Confirmation that the verbiage in the text is similar to the verbiage utilized by CoM leadership in their comments and charges filed on me
- Revisited the fatal threats of someone taking a sharp knife like object and X'ing out my face on communication board writing derogatory comments and the threats were filed not investigated. As of yesterday, you advised you will look into the matter  that occurred months ago and complete a full investigation
- Advised that you were not knowledgeable of any information concerning the ongoing legal investigation of the erroneous hostile work environment, retaliation and harassment charges made on me in Dec. 2020, the pending charges filed by  AFSCME Union Labor Secretary Mr. OShawn Smith in conjunction w/ CoM Management working with AFSCME employees
- CoM Legal has not contacted me at all to give any details or information pertaining to the investigation, but the investigation has been closed

- Your advisement that you would follow up with EDI concerning the outcome because you are not privy to any of the information pertaining to the investigation, but if I was not contacted than possibly ALL the charges filed were not validated
- Revisited the threats reported by CoM Sr. Manager pertaining to his spouse reporting to CoM property or any venue to cause me harm for delivering ADAAA documentation to her spouse (HOR) Home of Record and who advised me to allow CoM leadership and legal to handle the resolution of the four continuous threats made and ultimately the erroneous harassment charges filed

Thanks,
Tonnie

Get Outlook for iOS